# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Kenneth Edward Chance, Jr.,**
**Petitioner Below, Petitioner**

**vs)   No. 13-0593** (Kanawha County 13-MISC-158)

**Hon. Patrick Morrisey, Attorney General of West Virginia;**
**Jim Rubenstein, Commissioner, West Virginia Division of**
**Corrections; and David Ballard, Warden, Mt. Olive**
**Correctional Complex; Respondents Below, Respondents**

**FILED**

March 14, 2014
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Kenneth Edward Chance, Jr., appearing *pro se*, appeals the order of the Circuit Court of Kanawha County, entered May 20, 2013, that dismissed his petition for a writ of mandamus to compel various state officials to enforce contractual provisions meant to ensure adequate medical care and food service at Mt. Olive Correctional Complex. Respondents Hon. Patrick Morrisey, Attorney General of West Virginia; Jim Rubenstein, Commissioner, West Virginia Division of Corrections; and David Ballard, Warden, Mt. Olive Correctional Complex; by counsel John H. Boothroyd, filed a summary response. Petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

From February of 1995 to May of 2013, petitioner was an inmate at Mt. Olive Correctional Complex ("Mt. Olive").[1] On March 25, 2013, petitioner filed a petition for a writ of mandamus to compel various state officials to enforce contractual provisions meant to ensure adequate medical care and food service at Mt. Olive. Independent contractor Wexford Health Sources, Inc. ("Wexford") provides medical care to inmates at Mt. Olive, while independent contractor Aramark Corporation ("Aramark") serves the food at the prison.

In petitioner's petition, he alleged the following with regard to medical treatment: (1)

---

[1] In May of 2013, petitioner was transferred to the Northern Correctional Facility. On appeal, petitioner alleges that this transfer was in retaliation for his making accusations against a senior Mt. Olive official.

1

petitioner was not given antibiotics to treat cold/flu symptoms, which led to his developing "atypical pneumonia";[2] (2) petitioner was not provided with lactose enzymes so that he could consume dairy products; (3) petitioner was not given appropriate pain medications for his neurogenic/neuropathic pain; (4) petitioner was not provided with a medical mattress or a wedge pillow; (5) petitioner was required to purchase over-the-counter medications at the prison commissary; (6) petitioner was required to renew his prescription for coal tar shampoo; (7) petitioner was required to undergo blood work and an abdominal x-ray before having an ultrasound done on his kidney; (8) petitioner was not provided with care as promptly or as often as he would have preferred. In addition, petitioner averred that medical staff were violating his and other inmates' privacy rights by providing certain services at cell doors in the segregation unit, which allowed their confidential medical information to be overheard.

As to food services, petitioner alleged (a) inmates were customarily served only one type of salad; (b) the beef stew had both ground beef and turkey rather than beef tips; (c) the spaghetti had less than the minimum amount of meat sauce; (d) staff were not served the same food that inmates were served; (e) food items were never adjusted to meet inmate preferences; (f) free watermelon was not provided for the Fourth of July "picnic"; (g) cheaper items were served when supplies of regular items were depleted; and (h) inmates were mostly served processed food. Petitioner sought relief that included removal of respondent commissioner and respondent warden from their offices.

On April 23, 2013, respondents filed a motion for the circuit court to pre-screen petitioner's petition pursuant to the West Virginia Prisoner Litigation Reform Act, West Virginia Code §§ 25-1A-1 to -8, together with a motion to dismiss. In response, petitioner moved to strike those pleadings, moved for sanctions against respondents' counsel under Rule 11 of the West Virginia Rules of Civil Procedure, and filed a response to the motion to dismiss.

The circuit court did not rule on petitioner's motions to strike and for Rule 11 sanctions, but did rule on respondents' motion to dismiss the petition. The circuit court held that while a writ of mandamus constitutes a proper remedy to require a public official to act, it will not lie "[to] prescribe in what manner the public official acts to discharge his or her duties," citing Syl. Pt. 8, *Nobles v. Duncil*, 202 W.Va. 523, 505 S.E.2d 442 (1998) (Internal quotations and citations omitted.). The circuit court determined that "the law requires that the [Division] of Corrections provide food for inmates, but it does not dictate the means by which such food should be provided." The circuit court further found that "[a]ll the decisions made the doctors in the employ of [Wexford] appear to be reasonable[.]" With regard to petitioner's "remaining arguments," the circuit court concluded that petitioner "alleged no facts which would entitle him to relief[.]" The circuit court specifically noted that an evidentiary hearing was not required pursuant to West

Virginia Code § 25-1A-4(b)(1)[3] and that petitioner had no clear legal right to the removal of

---

[2] Petitioner was ultimately transported to Charleston Area Medical Center to receive treatment for his pneumonia.

[3] West Virginia Code § 25-1A-4(b)(1) provides, in pertinent part, that a prisoner's action is

correctional officials. Petitioner now appeals the circuit court's May 20, 2013, order.

We review the circuit court's dismissal of the petition for a writ of mandamus *de novo*. *See Nobles*, 202 W.Va. at 528, 505 S.E.2d at 447. This standard applies to cases where the circuit court's decision was based on the following analysis:

> A writ of mandamus will not issue unless three elements coexist-(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy.

Syl. Pt. 2, *State ex rel. Kucera v. City of Wheeling,* 153 W.Va. 538, 170 S.E.2d 367 (1969).

## ADEQUATE MEDICAL CARE AND FOOD SERVICE

On appeal, petitioner asserts that neither Wexford nor Aramark are fully complying with contractual provisions meant to ensure adequate medical care and food service at Mt. Olive. In Syllabus Point 5 of *Nobles*, this Court held that "[t]o establish that a health care provider's actions constitute deliberate indifference to a prison inmate's serious medical need, the treatment, or lack thereof, must be so grossly incompetent, inadequate, or excessive as to shock the conscience or be intolerable to fundamental fairness." 202 W.Va. at 526, 505 S.E.2d at 446; s*ee also United States v. DeCologero*, 821 F.2d 39, 42 (1st Cir. 1987) ("[T]hough it is plain that an inmate deserves *adequate* medical care, he cannot insist that his institutional host provide him with the most sophisticated care that money can buy.") (Emphasis in original.). This Court finds that similar standards apply to the provision of an inmate's food. In other words, while an inmate deserves adequate food, he cannot insist on the best food money can buy. After carefully reviewing the record, including petitioner's petition, the Court agrees with respondents that petitioner received adequate medical attention and food while at Mt. Olive. Therefore, the Court concludes that petitioner's allegations concerning the same lack merit.

## PRIVACY RIGHTS

Petitioner argues that medical staff were violating his and other inmates' privacy rights by providing certain services at cell doors in the segregation unit, which allowed their confidential medical information to be overheard. Respondents counter that inmates have diminished privacy rights while incarcerated. *See* Syl. Pt. 2, *State ex rel. White v. Narick*, 170 W.Va. 195, 292 S.E.2d 54 (1982) ("A prisoner's constitutional rights can be restricted or abridged when they substantially interfere with orderly prison administration."). Respondents assert that services are provided in such a manner because the segregation unit frequently houses violent inmates. While petitioner disputes that legitimate security concerns are implicated, "[w]e must be careful not to substitute our judgment for that of prison administrators." *Nobles*, 202 W.Va. at 534, 505 S.E.2d at 453; *see also O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282, 290 (1987) ("evaluation of penological objectives is committed to the considered judgment of prison

---

frivolous if it "[h]as no arguable basis in fact or law."

administrators" because it is prison administrators who have to "anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration"). Therefore, this Court finds that medical staff did not violate petitioner's and other inmates' privacy rights and concludes that the circuit court did not err in dismissing petitioner's petition for a writ of mandamus.

For the foregoing reasons, we affirm.[4]

Affirmed.

**ISSUED**: March 14, 2014

**CONCURRED IN BY**:

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

---

[4] Petitioner argues that while the circuit court dismissed his petition, the court should have ruled on his motions to strike and for Rule 11 sanctions. This Court has reviewed petitioner's motions and finds that they lack merit. The Court determines that the circuit court did not err in not addressing the motions.